The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| JAMES SCOTT PREDRAGOVIC, | CASE NO. 10-60259 |
| Debtor. | JUDGE RUSS KENDIG |
| | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |

Toby L. Rosen, chapter 13 trustee (hereafter "Trustee") filed an objection to confirmation of Debtor's plan on March 9, 2010. According to Trustee, the plan cannot be confirmed because Debtor miscalculated the disposable income to be paid into the plan and the plan was not filed in good faith. Debtor denies any miscalculation and seeks confirmation of the proposed plan. A hearing was conducted on April 15, 2010, after which the parties submitted briefs in support of their respective positions.

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## FACTS

Debtor filed a chapter 13 petition on January 27, 2010. Debtor identified himself as single on Schedule I of the petition, with no dependents. He is a laborer with the Timken Company, where he has worked for the past twenty-one years. On Schedule B, Debtor listed ownership interests in two vehicles: a 2003 Chevrolet Malibu, in fair condition, with 120,000 miles and a 2005 Ford F250 truck in good condition with approximately 24,000 miles. Debtor owns the Malibu outright. He owes Golden Circle Credit Union approximately $7,611.12 on the Ford truck, as set forth on proof of claim number eight filed by the credit union. Debtor intends to keep both vehicles and proposes to pay the Ford truck in full through the chapter 13 plan.

Debtor completed the means test, Official Form 22C. He is an above-median income debtor and is therefore required to commit to a five year plan and his disposable income is determined under 11 U.S.C. § 1325(b)(3). According to Debtor's calculations, after deducting all allowable expenses, his disposable income is negative $131.50. This figure is derived, in part, from deducting the following expenses related to Debtor's vehicles. On line 27A of the means test, Debtor notes that he pays operating expenses for two or more cars and claims $366.00, $183.00 per vehicle, as the local standard for two vehicles for "transportation; vehicle operation/public transportation expense." He then claims, on line 28, $335.67[1] as the local standard for "transportation ownership/lease expense" for the first vehicle and $489.00 for the second vehicle. The vehicle expenses total $1,344.00.

On Schedule J, Debtor claims the following vehicle expenses:

| | |
|---|---|
| $225.00 | Transportation |
| $125.00 | Auto insurance |
| $400.00 | Car payment |

Debtor's claim of actual vehicle expenses totals $750.00, approximately $600.00 less than claimed on the means test.

In spite of the negative disposable income on the means test, Debtor proposes to pay $300.00 into the chapter 13 plan. In addition to Trustee's fees and attorney's fees, the plan will pay a secured claim of $1,000.00 to Dell for a computer. The remainder of the funds will be distributed pro-rata to unsecured creditors. Trustee indicates this will result in a distribution of approximately 32%.

## LAW AND ANALYSIS

Trustee's main argument is that Debtor miscalculated disposable income by including deductions for two vehicles on the means test. Trustee has also objected to

---

[1] This amount is adjusted on line 47, increasing the expense by $153.33.

2

Debtor's proposed plan on the basis of lack of good faith. For the reasons contained herein, the court finds that the good faith objection is well-taken and therefore will sustain the Trustee's objection.

Good faith is a prerequisite to plan confirmation. 11 U.S.C. § 1325(a)(3). A good faith determination requires a review of the totality of the circumstances. Alt v. U.S. (In re Alt), 305 F.3d 413 (6th Cir. 2002) (citing Society Nat'l Bank v. Barrett (In re Barrett), 964 F.2d 588, 591 (6th Cir. 1992)). The Sixth Circuit has recognized twelve factors that should be considered in a good faith analysis:

(1) the debtor's income;

(2) the debtor's living expenses;

(3) the debtor's attorney's fees;

(4) the expected duration of the Chapter 13 plan;

(5) the sincerity with which the debtor has petitioned for relief under Chapter 13;

(6) the debtor's potential for future earning;

(7) any special circumstances, such as unusually high medical expenses;

(8) the frequency with which the debtor has sought relief before in bankruptcy;

(9) the circumstances under which the debt was incurred;

(10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;

(11) the burden which administration would place on the trustee;

(12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

Alt at 419 (citing Barrett, 964 F.2d at 592). The burden of proof on an objection to confirmation under section 1325(a)(3) is on the debtor. *See* Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123 (6th Cir. 1990) (citing In re Girdaukus, 92 B.R. 373, 376 (Bankr. E.D. Wis. 1988)).

Here, Debtor failed to meet his burden of establishing good faith. His sole argument in response to Trustee's objection is that a plan cannot be filed in bad faith based on deductions claimed on the means test. The court vehemently disagrees.

3

Debtor's expenses are but one factor to be reviewed.

The allowance or disallowance of expenses on the means test is not determinative of good faith. Complying with the means test does not mean that any combination of expenses that leads to an equal or better financial number being paid to creditors is acceptable. *See, e.g.,* In re Boyd, 414 B.R. 223 (Bankr. N.D. Ohio 2009); In re Sandberg, 2010 WL 2889695 (Bankr. D. Kan. 2010) (reporter citation not yet available).

This situation is analogous to a section 707(b)(3) motion to dismiss. In chapter 7 cases, a case can be dismissed as presumptively abusive under section 707(b)(2). If the presumption does not arise, section 707(b)(3) authorizes a court to consider dismissal if the petition was filed in bad faith or "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). A chapter 7 debtor can "pass" the means test but still be subject to dismissal. Consider a debtor living in a 12,000 square foot villa making an $8,000 mortgage payment. The $8,000 mortgage is an allowed deduction on the means test, but could be indicative of bad faith in a 707(b)(3) action. The same is true in a chapter 13 review for good faith. The means test is a limited purpose screening device. It is an algorithm that makes limited purpose calculations, not final determinations. Portions of the means test require debtors to input data about the status of secured creditor payments they are legally obligated to make as of the date of filing. This does not means that the debtor would be permitted to keep all secured collateral such as a mansion in the Hamptons. Debtor would have us head down this road, treating the means test as the HAL 9000, obviating the need for all of the pesky provisions of the Bankruptcy Code requiring evaluations of things like reality and social values. The rest of the Bankruptcy Code has not ceased to exist and most certainly not § 1325(a)(3).

Debtor claims $1,344.00 in vehicle expenses on the means test, yet itemizes only $750.00 in vehicle-related expenses on Schedule I, a difference of $594.00. Debtor proposes paying $300.00 into the plan, leaving $294.00, or $17,640.00, "unaccounted" over the life of the plan. The situation is analogous to the concerns addressed by the court in In re Baughman, 2008 WL 4487879 (Bankr. N.D. Ohio 2008) (unpublished). After reviewing Schedule J, it appears the funds have been allocated to other expenses in Debtor's budget. For example, the means test allows $517.00 as the national standard for "food, apparel and services, housekeeping supplies, personal care, and miscellaneous." According to Schedule J, Debtor's expenses in these categories (food, clothes, laundry and dry cleaning, phone, cable, recreation, and pet) total $845.00. Debtor has used the congressionally established allowances for vehicles on the means test to support a lifestyle above the congressionally approved living expenses. This was unacceptable in Baughman and remains unacceptable here.

Courts frequently find cases where a single debtor seeks to retain multiple vehicles objectionable. *See* In re Daniel-Sanders, 420 B.R. 102 (Bankr. W.D.N.Y. 2009) (stating, as dicta, "trustee correctly asserts that in most instances, for purposes of determining disposable income, a single debtor may expense only one automobile"); In re Styles, 397 B.R. 771, 775 (Bankr. W.D. Va. 2008) (allowing expenses for two vehicles on means test, but subjecting plan involving "nonessential assets" to review to determine

4

whether "unsecured creditors are better off than they would be if the asset is excluded and the payments on the secured debt are added into a monthly plan payment" (citation omitted)); In re Scurlock, 385 B.R. 814 (Bankr. M.D.N.C. 2008) (permitting debtor to deduct expenses on two cars because one was used by dependant); In re Aprea, 368 B.R. 558 (Bankr. E.D. Tex. 2007) (debtor was not entitled to claim expenses paid for his live-in fiancee's car). Similarly, courts reviewing chapter 7 cases on section 707(b)(3) grounds, which also require a review of the totality of the circumstances, frequently will not approve a single debtor deducting multiple vehicle expenses. *See* In re Zaporski, 366 B.R. 758 (Bankr. E.D. Mich. 2007) (although debtor could take deductions for two cars on means test, the vehicle expenses were part of many factors supporting dismissal); In re Pak, 343 B.R. 239 (Bankr. N.D. Cal. 2006) (agreeing with United States Trustee that $850 to maintain two cars was excessive); In re Jackson, 2008 WL 5539790 (Bankr. D. Kan. 2008) (unpublished) (debtor only entitled to claim expenses for two of his seven vehicles, one for himself and one for his son).

Trustee argues that it is bad faith to retain the Ford truck. She classifies it as a "luxury" vehicle, presumably on the fact it is a second vehicle. Trustee would have Debtor surrender the truck to reduce his expenses in order to increase the funding into the plan. Debtor's expenses would be reduced, he would have a seven year old car with over 100,000 miles on it. Consequently, this argument, standing alone, is not persuasive. However, it is not Trustee's burden to establish bad faith.

Debtor's cursory treatment of the issue of good faith is fatal. Debtor simply did not establish the plan was filed in good faith under a totality of the circumstances using the traditional twelve-factor test utilized in this circuit for examining good faith. A single debtor claiming $750 in vehicle expenses, in addition to claiming higher expenses for almost every other living expense, is not good faith. As a result, the court sustains Trustee's objection to confirmation pursuant to 11 U.S.C. § 1325(a)(3).

An appropriate order will be issued immediately.

# # #

**Service List**:

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702

Donald M. Miller
1400 Market Ave., N.
Canton, OH 44714-2608